# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PERCY TOMPKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 3906 |
| | ) |
| LASALLE BANK | ) |
| CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Bank of America's (BAC) motion to dismiss. For the reasons stated below, we deny the motion to dismiss.

## BACKGROUND

Plaintiff Percy Tompkins (Tompkins) contends that he is a black male and that he began working as a Branch Manager and Assistant Vice President for LaSalle Bank, N.A., a subsidiary of LaSalle Bank Corporation, on August 30, 2004, at the Matteson, Illinois branch. (A. Compl. Par. 10-11). Tompkins states that he was hired by and annually evaluated by an Area Manager named Sharon Esposito

1

(Esposito), who is a white female. (A. Compl. Par. 12). Tompkins claims that Esposito gave him favorable performance reviews in 2004, 2005, and 2006, before she was promoted to a new position sometime around June of 2007. (A. Compl. Par. 13-14). Tompkins states that Mark Henry (Henry), a black male, assumed Esposito's position as Area Manager, and represented to Tompkins that Tompkins would be Henry's "right hand man." (A. Compl. Par. 14-15). Tompkins alleges that shortly thereafter, Henry's attitude toward Tompkins changed and that in September of 2007, Tompkins was notified that he would be transferred to the Joliet, Illinois branch around October 1, 2007. (A. Compl. Par. 15-16).

Tompkins states that on October 1, 2007, Bank of America Corporation purchased LaSalle Bank Corporation and assumed any potential liability levied against ABN AMRO Bank, NV, the former owner of LaSalle Bank Corporation. (A. Compl. Par. 10). Tompkins alleges that, upon his October 1, 2007, transfer, his position at the Matteson branch was assumed by Stan Benes (Benes), a white male, who had previously been Branch Manager of both the Joliet and New Lennox branches. (A. Compl. Par. 17). Tompkins contends that he "was not given responsibility for managing the New Lennox branch," that "[t]he Joliet branch was considerably smaller than the Matteson branch," so that Tompkins' responsibilities decreased from supervising sixteen employees to supervising six employees, and that

2

he "was the only African-American branch manager in his region." (A. Compl. Par. 18-20). Tompkins also alleges that "[a]t the time of the transition to Bank of America, it was rumored that positions would be eliminated" in Tompkins' region. (A. Compl. Par. 22).

Tompkins states that sometime in October of 2007, new "Standards of Conduct" policies were implemented. (A. Compl. Par. 23). According to Tompkins, on October 22, 2009, he was "summarily terminated" after responding to a fax sent by Benes regarding a routine audit that a customer, Flagstar Bank (Flagstar), was conducting, verifying deposits of other customers. (A. Compl. Par. 24-29). Tompkins claims that since neither the fax itself nor Benes indicated that Flagstar's audit was confidential, Tompkins forwarded the fax to Worldwide Bank and Finance in an effort investigate the problems Benes had identified with some of the verification of deposit forms. (A. Compl. Par 26-28). Tompkins contends that Benes did not suffer any disciplinary action as a result of the incident. (A. Compl. Par. 32). Tompkins states that he was replaced by a white female who had been Assistant Branch Manager at the Joliet branch prior to Tompkins' termination. (A. Compl. Par. 31.) Tompkins also alleges that soon after his termination, Esposito and Henry, who were both present at the meeting where Tompkins was terminated, were demoted. (A. Compl. Par. 30, 33).

Tompkins asserts that on February 27, 2008, he filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR), which was cross-filed with the Equal Employment Opportunity Commission (EEOC). (A. Compl. Par. 34). Tompkins states that he received a Notice of Dismissal from the IDHR and a Dismissal and Notice of Rights from the EEOC on or around March 6, 2009, and June 24, 2009, respectively, providing Tompkins a right to sue letter. Tompkins brought the instant action on June 1, 2009, within 90 days of receiving the right to sue letter, and includes in his amended complaint claims of discrimination on the basis of race in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101, *et. seq.* (Count I), claims alleging race discrimination in violation of Title VII of the Civil Rights Act of 1966, as amended, 42 U.S.C. § 2000e *et seq.* (Count II), and claims brought under 42 U.S.C. § 1981 (Count III).

**LEGAL STANDARD**

In ruling on a motion to dismiss, a court must "take all of the factual allegations in the complaint as true" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), "a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(emphasis in original)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hecker v. Deere & Co.*, 569 F.3d 708, 710-11 (7th Cir. 2009)(stating that "*Iqbal* reinforces *Twombly*'s message that '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'")(quoting in part *Iqbal*, 129 S.Ct. at 1949). A plaintiff is not required to "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later").

## DISCUSSION

I. Employment Relationship

BAC argues that it should be dismissed from the case because BAC was never Tompkins' employer. In support of its motion to dismiss, BAC has attached numerous affidavits and emails to its motion and argues that since its motion relies

5

on evidence beyond the Complaint, it should be treated as a Federal Rule of Civil Procedure 56 motion for summary judgment. (Mot. 16). Tompkins contends that BAC's motion should be denied because it is not a proper Rule 12(b)(6) motion or a proper motion for summary judgment. Tompkins also argues that BAC's motion "presents factual issues which should only be resolved after discovery." (Ans. 1).

For a motion to dismiss pursuant to Rule 12(b)(6), with limited exceptions, the focus is solely upon the allegations in the complaint. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)(stating that "[w]hen ruling on a motion to dismiss, the court generally should consider only the allegations of the complaint"). Tompkins has alleged in his amended complaint that BAC was his employer. (A. Compl. Par. 38, 39, 51, 52). BAC argues that it has made repeated representations to Tompkins clarifying that BAC is not the correct party in the lawsuit. However, BAC admits that it is a parent company of Bank of America, N.A. (Mot. 10-13). While a parent corporation is not usually liable for the acts of its subsidiaries, a parent corporation can be held liable for the wrongs of its subsidiaries if the parent "caused the wrongful conduct . . . or the conditions of investors' liability ("piercing the corporate veil") have been satisfied." *Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 771 (7th Cir. 2007). Discovery is necessary to resolve the issue of whether BAC was Tompkins' employer or whether BAC might be liable as the parent

company of Bank of America, N.A., which BAC concedes was an employer of Tompkins. Given that the timing of Tompkins' transfer to the Joliet branch coincided with BAC's purchase of certain LaSalle Bank entities, it is reasonable for Tompkins to request discovery to learn what relationships exist between the parties and which parties are potentially liable. Since BAC's motion raises factual issues that require discovery, a motion for summary judgment is premature at this juncture.

II. Procedural Default

BAC also argues that it should be dismissed from the case because Tompkins has not met the requirements of 42 U.S.C. § 2000e-5(f)(1) with respect to BAC since Tompkins never filed a complaint against BAC with the EEOC or the IDHR. Tompkins argues that he filed a technical amendment in February 2009, adding BAC to the Charge of Discrimination he had earlier filed with the IDHR. Even if we did not consider the technical amendment that Tompkins claims to have filed, BAC is a proper defendant in the instant action at this juncture. The Seventh Circuit has stated that "where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance, the charge is sufficient to confer jurisdiction over that party." *Eggleston v. Chicago Journeymen Plumbers'*

*Local Union No. 130, U. A.*, 657 F.2d 890, 905 (7th Cir. 1981). In response to the Charge of Discrimination, BAC's Assistant General Counsel, Thomas Guyer, prepared an affidavit on behalf of LaSalle Bank, seeking to clarify AMN AMRO Bank NV's non-involvement in the allegations. (Mot. Par. 8). Thus, BAC clearly had adequate notice of the charge and an opportunity for conciliation. At this juncture, we decline to dismiss BAC from the lawsuit on the basis of 42 U.S.C. § 2000e-5(f)(1). Therefore, we deny the motion to dismiss.

## CONCLUSION

Based on the foregoing analysis, we deny BAC's motion to dismiss.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 24, 2009